UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
In re:

                                                                      Case No. 14-73711-reg

AHMAD HASSAN,

                                                                      Chapter 13

          Debtor.

--------------------------------------------------------------------x

**MEMORANDUM DECISION**
(Re: Motion to Avoid Second Mortgage Lien)

Before the Court is a motion ("Motion") by Ahmad Hassan (the "Debtor") to avoid a

second mortgage lien on his residence (the "Property"), pursuant to 11 U.S.C. §§ 506(a) and (d)

and § 1322(b)(2), in order to treat the second mortgage claim as unsecured in the Debtor's

Chapter 13 plan.  Specialized Loan Servicing LLC ("SLS"), individually and as servicing agent

for Bank of New York Mellon f/k/a The Bank of New York as successor Indenture Trustee to

JPMorgan Chase Bank, N.A. CWHEQ Revolving Home Equity Loan Trust, Series 2006-F

represents the second mortgagee.  SLS objects to the Motion on the basis that the value of the

Property exceeds the amount owed on the first mortgage as of the date the petition was filed.

SLS argues that after accounting for the first mortgage, there is equity remaining  to which SLS's

mortgage lien can attach, under *In re Nobelman*, 508 U.S. 324 (1993), the bankruptcy provisions

cited by the Debtor may not be used to modify SLS's mortgage lien.  According to the Debtor,

there is no such equity to which SLS's mortgage lien can attach.  The issue before the Court is

whether the value of the Property is greater than $258,332.85, the amount of the allowed secured

claim filed by the first mortgagee.  The outcome of the Motion has significant consequences to

the Debtor because the Debtor must pay SLS in full under a Chapter 13 plan, so long as SLS's

lien is secured by a dollar in value.

The Debtor has the burden of establishing that the value of the Property is equal to or less than the amount owed on the first mortgage, and that there is no excess value to which the second mortgage lien can attach.  Once the Debtor has met his burden, SLS must present sufficient evidence to overcome the Debtor's valuation.  The Debtor's burden of proof is not a heightened one, as urged by SLS, but it is the Debtor's initial burden nonetheless.  The record in this case consists of two appraisals submitted by the parties and their testimony in support of their valuations.  Both appraisers used comparable sales to establish value, and the difference in valuation between the two appraisers is less than ten percent.  Based on the evidentiary record, the Debtor has met his burden of proof as required by the Bankruptcy Code.  Both appraisals employ sound methodologies and the appraisers are qualified, but taking into consideration all of the evidence and testimony, SLS has failed to overcome the Debtor's valuation.  Therefore, for the reasons amplified below, the Motion is granted, and SLS's junior lien shall be treated as an unsecured claim in the Debtor's Chapter 13 plan.

## PROCEDURAL HISTORY

On August 12, 2014 (the "Petition Date"), the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code.  On August 13, 2014, the Debtor filed the Motion.  On September 17, 2014, SLS filed an Affirmation in Response.  Hearings on the Motion were held on November 10, 2014 and December 10, 2014.  An evidentiary hearing was held on February 4, 2015.  On February 16, 2015, the Debtor and SLS each filed post-hearing briefs.  In addition to raising issues related to the Motion, SLS voiced objections to confirmation of the Debtor's plan.  Thereafter, the matter was marked submitted.

## FACTS

The Debtor owns the Property which is his residence. The Debtor listed the Property on Schedule A, with a value of $250,000.  The Property is encumbered by a first mortgage, with a balance owed in the amount of $258,332.85 as of the Petition Date.  SLS is listed in the schedules as holding a second mortgage lien on the Property, with a mortgage balance of $62,000 as of the Petition Date. In the Motion, the Debtor alleges that the Property was worth $250,000 as of the Petition Date.  The Debtor seeks to have the second mortgage lien of SLS declared unsecured pursuant to sections 506(a) and (d) of the Bankruptcy Code and treated as an unsecured claim in the Debtor's proposed plan pursuant to § 1322 of the Bankruptcy Code.  Based on the amount owed on the first mortgage as of the Petition Date, the Debtor is entitled to the relief sought in the Motion only if the Court finds that the Property is worth $258,332.85 or less.

Each party retained an expert to value the Property.  The Debtor's expert, Robert Grennan, is a certified real estate appraiser who has been conducting appraisals since 1998. Grennan's appraisal was prepared as of April, 2014, which is within a few months prior to the Petition Date.[1] Grennan employed the sales comparison approach, using similar houses in the vicinity of the Property that were sold at or around the date of his appraisal.  According to Grennan, the Property was worth $250,000 as of the appraisal date.  (Debtor's Ex. 1).  The Debtor's appraisal took into consideration homes that were more than one mile away from the Property because there were few homes within a one-mile radius with only two bedrooms. (Debtor's Ex.1).  In addition to having two legal bedrooms, the Property is located on a busy street, both factors which adversely affect the value of the Property.   (Debtor's Ex. 1).  Grennan compared the Property to six home sales in the area.  The prices for the comparable sales ranged

[1] Both parties agree that the Property should be valued as of the Petition Date for the purposes of the Motion.

from $235,000 to $305,000. (Debtor's Ex. 1). After adjusting the sale prices for each property to compensate for location, size and whether the basement was finished and for the extra bathroom in the basement, the comparable adjusted sales ranged from $243,200 to $283,200. The first comparable property ("Comp 1") required several adjustments to the $278,000 sale price, the most significant being a 10% downward adjustment to account for the more favorable location. The differences resulted in a reduction of $18,700 for an adjusted sale price of $269,400. The second comparable property ("Comp 2") is a two bedroom house 1.5 miles away from the Property. After making several adjustments including a 10% downward adjustment for the more favorable location, the sale price of $260,000 was adjusted upward to $261,100. The third comparable property ("Comp 3") is a two bedroom house located .58 miles from the Property, which sold for $235,000. After making an upward adjustment in the total amount of $8,200 based on its superior residential location, its poor condition and some other factors, Grennan valued Comp 3 at $243,200. The fourth comparable property ("Comp 4") sold for $305,000. After a net downward adjustment of $21,800 to reflect the better condition of Comp 4 and the lack of finished rooms in the basement, the value of Comp 4 was adjusted to $283,200. The fifth comparable property ("Comp 5") sold for $295,000. After making a net downward adjustment in the amount of $50,400, based primarily on the better location of Comp 5, a third legal bedroom and the larger square footage, the property was valued at the adjusted amount of $244,600. The sixth comparable property ("Comp 6") sold for $260,000. The sale price of Comp 6 was adjusted downward in the net amount of $9,400 to reflect the smaller living area, the lack of a finished basement and the better location. As a result, Comp 6 has an adjusted value of $250,000. According to Grennan, the most significant factor in the adjusted value of the comparable home sales is the location. In general, homes prices in residential areas were

decreased by 10% to take into account the more desirable location. Trial Tr., p. 14.  With respect

to the basement, homes with unfinished basements were given an upward adjustment of $2,500,

and homes without a bathroom in the basement were given an upward adjustment of $1,000 -

$2,000.  Trial Tr., p. 16.  According to Grennan, a legal bathroom built above-grade would call

for an adjustment of approximately $5,000.  Id.

While the average value of the comparable sales examined by Grennan equals

$256,833.33, Grennan concluded that the actual value of the Property was below this average

because of its location on a busy street, next to commercial property (Trial Tr., p. 24).

According to Grennan, the location of the Property had an adverse effect in excess of the 10%

reduction normally taken to reflect a less desirable location.  Id.

Arleen Goscinski prepared an appraisal for SLS and testified in support of her

appraisal, which valued the Property at $270,000 (SLS Ex. 5).  Goscinski has been a certified

appraiser for twenty five years, and her credentials were not subject to challenge by the Debtor.

Her appraisal was prepared to reflect the value of the Property as of August 12, 2014.  Like Mr.

Grennan, Ms. Goscinski used the comparable sales approach, but she used only three comparable

sales, including one sale that took place on the same street on June 14, 2014 ("SLS Comp 1").

SLS Comp 1 sold for $270,000, and Ms. Goscinski gave SLS Comp 1 the greatest weight of the

three comparable sales she chose. (Trial Tr., p. 28).  SLS Comp 1 had three bedrooms and one

bathroom, and was larger than the Property by approximately 400 feet.   SLS Comp was located

on the same street as the Property, so Ms. Goscinski considered the location to be equivalent.

(Trial Tr. p. 28).   After taking into consideration the larger size, the extra bedroom upstairs and

the lack of a finished basement and bathroom in the basement, along with the fact that the

kitchen had not been updated, she gave SLS Comp 1 an adjusted value of $269,460.00.  (SLS

Ex. 5).  The second comparable ("SLS Comp 2") sold for $278,000, with an adjusted valuation

of $267,955.  The adjustment was based on the smaller living space and lack of finished

basement, offset by the residential location.  The third and last comparable ("SLS Comp 3") sold

for $260,000, which was adjusted to $271,265.00.  (SLS Ex. 5).  The upward adjustment was

based on the residential location and updated bathroom, tempered by the smaller living space, the

average condition of the home, and the lack of a finished basement.   Ms. Goscinski used a 10%

adjustment for the residential locations for SLS Comp 2 and SLS Comp 3.  (Trial Tr. p. 31, 32).

Like Mr. Grennan, Ms. Goscinski believes that the location of the property in question is the

primary consideration, but according to Ms. Goscinski, she would not have included two of the

comparables used by Mr. Grennan because one was an older colonial, and another was in a

different school district.  (Trial Tr., p. 34 – 35).  Ms. Goscinski valued the Property's finished

basement with the two bedrooms and bathroom at $15,000.  (Trial Tr., p. 39).  She gave greater

value to the rooms in the basement than did Grennan based on her opinion that the rooms were

usable and would add value to any buyer, despite the fact that the bedrooms and bathroom were

not legal.

**DISCUSSION**

The Debtor seeks to avoid the junior mortgage lien of SLS pursuant to

Bankruptcy Code §§ 506(a), 506(d), 1322(b) and 1325.  If the Motion is granted, then SLS's

claim will be treated as unsecured, its lien will be avoided upon entry of the Debtor's discharge,

and SLS will only be paid a percentage of its claim under the Debtor's proposed plan.  If the

Motion is denied, then SLS will have a secured claim and must be paid in full under any plan

proposed by the Debtor.  A Chapter 13 debtor may seek to avoid a mortgage lien on his or her

residence if that lien is determined to be wholly unsecured pursuant to Bankruptcy Code §§ 506(a), 506(d) and 1322(b). *Pond v. Farm Specialist Realty (In re Pond)*, 252 F.3d 122, 126 (2d Cir. 2001). Section 506(a) is the correct starting point for a judicial determination of value of the creditor's secured claim. *Id*. (Section 506(a) "provides that a claim is secured only to the extent of the value of the property on which the lien is fixed." (quoting *United States v. Ron Pair Enters., Inc*., 489 U.S. 235, 239 (1989)). Therefore, whether SLS's claim is secured turns on the value of the Property compared to the amount of the first mortgage on the Property.

**Legal Standard and Burden of Proof**

The Court is mindful of the fact that this valuation is being made in the context of a Chapter 13 bankruptcy, where the outcome of this decision determines whether SLS is to be paid the full amount of its claim or whether SLS will be paid the same percentage as the other unsecured creditors in the Debtor's plan. Under *Nobelman v. American Sav. Bank*, 508 U.S. 324 (1993), the Supreme Court held that a Chapter 13 debtor may not bifurcate a claim on a debtor's residence into a secured and unsecured claim, as to do so would violate the anti-modification provisions set forth in Section 1322(b)(2) of the Bankruptcy Code. The Second Circuit has read *Nobelman* and the relevant Bankruptcy Code provisions to "protect[] a creditor's rights in a mortgage lien only where the debtor's residence retains enough value – after accounting for other encumbrances that have priority over the lien – so that the lien is at least partially secured under Section 506(a)." *In re Pond*, 252 F.3d at 126. Therefore, the Second Circuit, along with every other Circuit considering this issue, permits Chapter 13 debtors to avoid wholly unsecured junior mortgages, notwithstanding the anti-modification provisions of Section 1322(b)(2).

The Supreme Court in *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 961 (1997), highlighted that the Bankruptcy Code provides that valuation is to be determined in light of the

purpose of the valuation as well as the proposed use or disposition of the property.  In this case,

the purpose of this valuation is to determine whether SLS receives payment in full under the

plan.  While not the basis of its decision, the Court is aware that so long as there is one dollar in

value in excess of the first mortgage, SLS will be paid an amount that far exceeds that dollar.

The Debtor has the burden of demonstrating that "there is not even one dollar of value" in

the Property in excess of the amount owed on the first mortgage.  *In re LePage*, 2011 WL

1884034, at *4 (Bankr. E.D.N.Y. May 18, 2011).  (*citing In re Karakas*, 2007 WL 1307906 at *6

(other citations omitted)). Once the Debtor has met his burden, SLS must submit sufficient

evidence to overcome the valuation proposed by the Debtor.  *Id*. (other citations omitted).   SLS

urges the Court to adopt a high threshold based on the facts of this case.  According to SLS, a

heightened standard is justified where 1) there was sufficient equity in the property for the junior

lien to attach at the time the loan was executed pre-petition, 2) the alleged deficiency may have

been created in part because of the debtor's failure to make payments on the first mortgage or the

debtor has incurred other obligations that prime the existing liens on the property, and 3) the

alleged value deficiency is not significant.  In support of adopting this test, SLS cites to *In re

Fisher*, 289 B.R. 544 (Bankr. W.D.N.Y. 2003), and *In re Dziendziel*, 295 B.R. 184 (Bankr.

W.D.N.Y. 2003).  Both decisions were rendered by Judge Ninfo.  Pursuant to Judge Ninfo's

rationale, a heightened burden of proof is warranted where the debtor's conduct fits within the

criteria outlined above.  Although not expressly discussed in either case, Judge Ninfo seems to

have concluded that where the debtor bears some responsibility for the lack of equity in the

property due to non-payment of the secured obligations, the debtor should face a higher burden

in order to strip off the junior mortgage.

While the heightened burden of proof set forth in *Fisher* and *Dziendziel* may have some

appeal, it is not supported by the text of the Bankruptcy Code.  Neither § 506 nor § 1322 contain

language imposing or suggesting a heightened burden of proof based on the debtor's conduct

prepetition.  As Judge Drain notes in *In re Ricci-Breen*, No. 14-22798 (RDC) (2015 WL

5156617, n. 3 (Bankr. Aug. 31, 2015), "under the rationale of *In re Pond*, none [of Judge Ninfo's]

factors regarding the debtor's conduct] warrant altering the burden of proof, which may explain

why no other court appears to have followed [Judge Ninfo's] 'additional scrutiny' approach."

This Court agrees with Judge Drain, and declines to follow *In re Fisher* and *In re Dziendziel*.

The initial burden of proof remains on the Debtor, but no additional scrutiny is warranted by the

Debtor's alleged conduct prepetition. Once the debtor has established a value, the creditor then

has the burden of overcoming this valuation.

Courts have consistently held that valuation of assets is "not an exact science*."  In re*

*Karakas*, No. 06-32961, No. 06-80245, 2007 WL 1307906 at \*6 (Bankr. N.D.N.Y. May 3,

2007); *see Boyce v. Soundview Tech. Grp*., 464 F.3d 376, 387 (2d Cir. 2006).  Courts are not

bound by appraisals presented in determining the value of property, and the Court may form its

own opinion after giving the appraisals and the appraisers' testimony consideration. *Wright v.*

*Chase (In re Wright)*, 460 B.R. 581, 584 (Bankr. E.D.N.Y. 2011) (citing *In re Patterson*, 375

B.R. 135, 144 (Bankr. E.D. Pa. 2007) (other citations omitted)).   "The Court may look to the

accuracy, credibility and methodology employed by the appraisers" to determine the proper

valuation of property.  *In re LePage*, 2011 WL 1884034, at \*4 (Bankr. E.D.N.Y. May 18, 2011)

(citing *In re YL 87ᵗʰ Holdings I LLC*, 423 B.R. 421, 428-35 (Bankr. N.D.N.Y. 2010), and *In re*

*Carmania Corp. N.V*., 156 B.R.  119, 121 (Bankr. S.D.N.Y. 1993)).

When two appraisal reports conflict, a court should carefully compare "the logic of their analyses" and "the persuasiveness of their subjective reasoning." *In re Park Ave. Partners Ltd. P'ship*, 95 B.R. 605, 610 (Bankr. E.D. Wisc. 1988).

## ANALYSIS

Both appraisers are qualified and used similar methodology, yet the Debtor's appraiser values the Property at $250,000, and SLS's appraiser values the Property at $270,000. One significant difference between the two appraisers is the number of comparable sales included in the analysis. The Debtor's appraiser included six comparable sales to arrive at his valuation, while SLS's appraiser used only three comparable sales. According to SLS's appraiser, Comp. 3 should not be included because it is a different model house and it is significantly older. Comp. 1 should be excluded because it is in a different school district. Comp. 3 had an adjusted value of $243,200 and Comp. 1 had an adjusted value of $283,200.

Other than these distinctions, the most significant difference between the methods employed by the two appraisers is the value given to the finished basement. The Debtor's appraiser gave the finished rooms in the basement a valuation of approximately $4,000, and SLS's appraiser gave the basement rooms a valuation of $15,000. The Debtor's appraiser gave the below-grade bathroom a value of $1,000 to $2,000, and acknowledged that if the bathroom were located above-grade, it would be valued at $5,000. The two bedrooms in the basement were treated as a finished basement, and given a value of $2,500. SLS's appraiser justified her higher value for the finished basement based on the value to the buyer. Although the bedrooms and bathroom in the basement were not legal, she believed they were worth more than a merely finished basement.

If the comparable sales used by the Debtor's appraiser were averaged, the valuation would equal $256,833.33.   According to the Debtor's appraiser, the location of the Property is on a busy road, next to commercial property, which requires a further reduction, as is reflected in Grenner's appraisal of $250,000.  The Court has no reason to believe that this additional reduction is improper.   This is not a case where one appraisal is clearly superior to the other appraisal, as was the case in *In re Lepage*, 2011 WL 1884034.  In *Lepage*, the mortgagee's appraiser employed a flawed methodology and provided testimony that was less credible than the debtor's appraiser, and the Court concluded that the debtor sustained his burden of proof.  This is also not a case like *Wright v. Chase (In re Chase)*, where Chief Judge Craig denied the debtor's motion to avoid the second mortgage because the debtor's retained appraiser concluded that the property was worth in excess of the first mortgage. In this case, the two valuations differ by less than ten percent, and both appraisers used the sales comparison approach with similar variables. Therefore, this case turns largely on the burden of proof assigned to the Debtor and SLS.  The Debtor has met his initial burden of proof and has established that there is not $1 in value beyond the amount of the first mortgage.  The Court cannot conclude, based on all of the evidence, that SLS has overcome the Debtor's valuation.  Therefore, the Court finds that the Property is worth

less than the amount owed on the first mortgage.  To the extent SLS has raised objections to confirmation of the Debtor's plan in its supplemental submission, the Court shall consider them at the Debtor's next confirmation hearing.

## CONCLUSION

Based on the entire record before the Court, the Debtor has sustained his burden of proof regarding the value of the Property, which the Court finds is worth less than $258,332.85. SLS has not overcome the Debtor's valuation, and therefore, the Motion is granted.  The Court shall enter an order consistent with this Memorandum Decision.



**Dated: Central Islip, New York**
**October 8, 2015**

**Robert E. Grossman**
**United States Bankruptcy Judge**